FILED

No. _____

MAR 2 0 2008

Mar 20, 2008

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

William Moorehead,
                    Petitioner,

v.

08CV1639
JUDGE ZAGEL
MAGISTRATE JUDGE SCHENKIER

UNITED STATES OF AMERICA,
No. 05-CR-546,        Respondent.

MEMORANDUM IN SUPPORT THEREOF
MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR
CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES NOW the Petitioner in the above-entitled action,
William Moorehead, do hereby respectfully moves this Honorable
Court Judge, James B. Zagel, to vacate his profound judgment
with respect to Plea Agreement and Sentence as followed, for
the stated reasons:

JURISDICTIONAL STATEMENT

In this motion pursuant to § 2255 of Title 28 U.S.C.,
the petitioner raised four (4) grounds that unlawful errors

that occurred at preplea stage, at his plea stage, at his sentencing hearing, and in connection with right to appeal, created clear unfair prejudice, as such errors by counsels of record worked to his actual and substantial disadvantage to fundamental rights, infecting his entire free will and decision on whether to accept or reject proposed plea agreement offer, **Jones**, 167 F.3d 1142 at 1145 [5] (7th Cir 1999), as well as sentencing package, **Polson**, 285 F.3d 563 at 566-567 [1, 4] (7th Cir. 2002), with constitutional dimensions, **Glover**, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).[1]

Even those defendants who pleaded guilty have not lost such rights to litigate claim of ineffective assistance of counsel. See **Soto**, 37 F.3d 252 at 253-254 [2] (7th Cir. 1994); **Stoia**, 22 F.3d 766 at 768-771 [1, 6-9] (7th Cir. 1994); **Guinan** 6 F.3d 468 at 471-473 [5, 9, 14] (7th Cir. 1993); and **Kimmelman** 477 U.S. 365, 106 S.Ct. 2574, 2585, 91 L.Ed.2d 305 (1986).

To bring a proper claim under 28 U.S.C. § 2255, it is required that petitioner show cause for why the matter was not previously raised prior to plea stage, at plea hearing, or at sentencing stage, and in connection with appeal right, and must show that he was prejudice by failure to raise such claim. See **Frady**, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). Also in accordance with law, petitioner can establish cause by demonstrating that he received ineffective assistance of counsel. **Murray**, 477 U.S. 478, 106

---

[1]    Luis Martin Galvan, Federal Defender Program, and Imani Chiphe, at the same Federal Defender Program, 55 East Monroe-Suite 2800, Chicago, Illinois 60603.

-2-

S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Under the circumstances, petitioner was represented by two (2) attorneys during the course of preplea and Plea stages, and one (1) attorney at sentencing phases:

    a. Mike Monico, at preplea stage;[2]

    b. Luis Martin Galvan, at plea stage;[3]

    c. Imani Chiphe, at sentencing hearing proceedings;[4]

Petitioner claim is that his acceptance of proposed plea agreement offer as written, Jones, 167 F.3d at 1145 [5], and accepting sentencing package, Polson, 285 F.3d at 566-567 [1, 4], Glover, 531 U.S. 198, 121 S.Ct. 969, 148 L.Ed.2d 604(2001), is the substance of inducement by counsels of record action, Mr. Galvan and Mr. Chiphe, who misrepresentation are liable to which the petitioner was exposed.  Id.

    d. "Authority does not suggest that a minimal amount of additional time in jail cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance."

Law profound in **Strickland**, 466 U.S. 668, 687, 104 S.Ct. 2052 80 L.Ed.2d 674 (1984). Denial of due process to impose cage in sentencing range on basis of ex parte information factros petitioner had no opportunity to deny or explain, counsels failure to investigate meet the Strickland prejudice tests.

---

[2]    Attorney at Law, the law firm of Mike Monico, 20 S. Clark Street, #700, Chicago, Illinois.
[3]    Luis Martin Galvan, Federal Defender Program, 55 East Monroe-Suite 2800, Chicago, Illinois 60603.
[4]    Imani Chiphe, Federal Defender Program, 55 East Monroe— Suite 2800, Chicago, Illinois 60603.

A. Ground One: Counsel provided Ineffective Assistance, Sixth Amendment, when counsel of record erroneously deprived the petitioner of his right to make a reasonable informed decision on whether to accept or reject a given plea offer as was negotiated by counsel himself without petitioner's complete full attention and concerns and understanding of applicable Guidelines setting, when it comes to the framework and context of Cooperational Agreement motion based on petitioner's substantial assistance to Government or Authorities, because of first counsel's undesirable interest in the negotiated plea outcome, deprived petitioner of the ability to exercise a competent, voluntary and intelligent choice among alternative courses of action open to the petitioner.  Plea and terms of Waiver was not made knowingly and voluntary, as such was the result of ineffective assistance of counsel. Id. Sixth Amendment.

Argument: The Sixth Amendment guarantees a criminal defendant charged with a serious crime the right not merely to counsel, but to the effective assistance of counsel.  Johnson, 793 F.2d 898 at 900-902 [1, 2-3] (7th Cir. 1986).

Johnson argues that the decision to reject or accept a plea is likewise a fundamental decision which an attorney cannot make for his client without giving rise to a claim of ineffective assistance.  The Seventh Circuit agreed with Johnson that in ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes

-4-

ineffective assistance of counsel under the sixth and fourteenth amendments. Concluding, Apart from merely being informed about the proffered agreement, we also believe that a defendant must be involved in the decision-making process regarding the agreement's ultimate acceptance or rejection. Id. at 902 [3].

Petitioner, unlike Johnson, was not informed of the full facts and aspects of the plea agreement and the likely consequences of accepting the agreement without nowhen what was negotiated between both parties, the prosecutor and his defense counsel, he clearly affirm that he was not given an opportunity to discuss its content with neither attorneys, he never had the opportunity to voice his feelings regarding the decision on whether to reject proposed plea agreement and its sentencing package or to accept the same, as opposed to full decision made by counsel only. See (Letter of Petitioner Mr. Moorehead dated June 4, 2007) (and also Letter of Petitioner Mr. Moorehead dated July 5, 2007) Exhibit A.

The decision to accept or reject any given proposed plea agreement and its terms, is owed to defendant. "In conducting discussions with the prosecutor the lawyer should keep the accused advised of developments at all times and all proposals made by the prosecutor should be communicated promptly to the accused." Id. at 901. "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satosfy the constitutional command." Id. Counsel

-5-

can deprive a defendant of his right to counsel by failing to render "adequate legal assistance." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064.

> The right to counsel plays a crucial role in the adversarial systems embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.

Id. 466 U.S. at 685, 104 S.Ct. at 2063. Attorney's failure to communicate with petitioner about each aspects of the plea agreement terms proposed offer and the likely consequences of accepting the agreement as offered violates petitioner's well established rights.

A.    1) First attorney, Mr. Monico, withdrew from petitioner Mr. Moorehead's case before indictment discovery material and discussion of plea agreement proposal, do to fee payment role being excess and unsettled, thereby leaving petitioner at a crucial time without an attorney to handle any **plea agreement** discussions, followed by any negotiation.

B.    2) Second attorney, Mr. Galvan, however, abandon his "duty to loyalty" owing to his client petitioner because of conflict adverse against counsel himself, See Exhibit B., at the time of representation owed to petitioner. Mr. Galvan, during the course of representing petitioner, was defending himself, thereafter a complaint had been filed against him before the hearing "Board of the Illinois Attorney Registration

and Disciplinary Commission," No. 07-CH-133, about counsel's misconduct that was said to be in violation of counsel's terms of employment with the Federal Defender Program.

At no time during the disposition of the plea agreement offered by the prosecution did counsel Mr. Galvan informed petitioner of any conflict adverse against counsel that may cause limited representation owed to petitioner, for exchange one's owe decision-making alternative owed to himself. Where,

(1) counsel may be heavily involved in preparing an adequate defense against the complaint itself, if an answer is ordered accordingly by the Commission, (2) an adverse effect that may cause a mental depression break-down in fear of its own self into trouble with a higher force affecting one's performance whose undivided loyalties lie with the interest of his client. Cuyler V. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). An actual conflict of interest results if "'the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interest.'" See Exhibit B.

In this case, petitioner believe that counsel Mr. Galvan acted unreasonable in not informing him of the incident with the "Board of the Illinois Attorney Registration and Disciplinary Commission" regarding a complaint filed against counsel, and that petitioner's right to effective assistance of counsel may have been compromised. Jones, 167 F.3d 1142 at 1145 [5] (7th Cir. 1999). Petitioner is entitled to raise

claims under 28 U.S.C. § 2255 challenging the plea agreement and its waiver terms on the grounds of involuntariness as a result of ineffective assistance of counsel.  See Exhibit B.

Mr. Galvan was aware of its disciplinary hearing, which information was available, at the very time during decision making process regarding the plea agreement's ultimate response from petitioner on whether to accept or reject such proposed agreement and its terms as written.  Strickland, 466 U.S. at 690, 104 S.Ct. at 2066 ("a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct").  Hence, an evidentiary hearing has become necessary accordance to law to prevent unjustice inconsistent with the constitution command.

C.    3) Third attorney, Mr. Chiphe was the last to represent petitioner in this case.  Prior to sentencing hearing that was held on April 26, 2007, counsel were aware of Mr. Galvan situation with the Commission Board regarding a Complaint investigative report concerning misconduct in violation of counsel's terms of employment with the federal defender program,  See Exhibit B.,[5] during the time that plea agreement acceptance by petitioner.  In an express statement made by counsel,

> I would never have allowed you to sign such an plea
> agreement such as this one.

---

[5]    By his own express statement, counsel Mr. Chiphe have the ability to play a significant role relating to petitioner Mr. Moorehead's situation, regarding his reason for repleading

based on his observation of the plea itself, it was clearly objectively unreasonable for counsel Mr. Chiphe to allow such a plea agreement as written to stand.  Counsel should have investigated the plea situation between the prosecutor and Mr. Galvan representation of its own interest and petitioner Mr. Moorehead's decision-making ability to participate in the plea bargaining process and discussion itself respectively, for possibility of prejudice toward the interst of petitioner himself.  Johnson, 793 F.2d 898 (7th Cir. 1986),

> "the decision to plead guilty is one that must be made by the defendant, and is not one in which an attorney may speak for his client without consultation." Concluding that "the defendant has a right to be informed about the plea agreement as part of his participation in the decision-making process surrounding his defense."

Id. at 900-901 [1, 2] (quoting Boykin V. Alabama, 395 U.S. 238, 242-44, 89 S.Ct. 1709, 1711-13, 23 L.Ed.2d 274 (1969); Brookhart V. Janis, 384 U.S. 1, 7, 86 S.Ct. 1245, 1248, 16 L.Ed.2d 314 (1966).

At the time he replaced Mr. Galvan, if he had tooking the necessary steps to investigate the situation between "Mr. Galvan and representation owed to petitioner," counsel Mr. Chiphe may or would have possessed a thorough understanding of his client's state of mind and Mr. Galvan performance in handling the plea situation, to reconstruct the circumstances surrounding whether it was Mr. Galvan's decision to speak for petitioner without consultation, that may have convince him (Mr. Chiphe) to withdraw petitioner's plea before sentencing. See Exhibits A and B.  Jones, 167 F.3d at 1145 [5].

> "Justice dictates that a claim of ineffective
> assistance of counsel in connection with the
> negotiation of a cooperation agreement, here plea
> agreement, cannot be barred by the agreement itself—
> the very product of the alleged ineffectiveness.  To
> hold otherwise would deprive a defendant of an
> opportunity to assert his Sixth Amendment right to
> counsel where he had accepted the waiver in reliance
> on delinquent representation."

Id. at 1145 [5].

Similarly, where counsel Mr. Chiphe abandons his duty of
loyalty owed to petitioner and effectively joins the attorneys
in an effort to maintain plea conviction and process sentence
suffers from an obvious non-interest party.  Hill V. Lockhart
474 U.S. _52_, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)
(applying Strickland test "to ineffective assistance claims
arising out of the plea process"),

A reasonable probability is that, but for counsel Mr.
Chiphe's errors, the result of the plea and sentencing
situations may or would have brought a different outcome. Id.
Exhibits A and B.  Hence, an evidentiary hearing has become
necessary to develop a record before the court.  Plea and
Waiver terms within the agreement itself was not knowing and
intelligently made.  Replead is requested.

B. Ground Two: Petitioner was deprived of the Effective
Assistance of Counsel, Sixth Amendment, and of Due Process as
guaranteed by the Fifth Amendment Clause, because petitioner
was in state of "Depression at the time he accepted the Plea
Agreement."  Counsel of record failure to investigate other
plausible lines of defense undermined counsel's ability to

-10-

challenge prior to sentencing this ex part information, such information make the plea acceptance decision involuntary and ineffective relinquished of petitioner's rights.

Argument:  The Supreme Court has held that criminal defendants have a Sixth Amendment right to counsel.  Strickland, 466 U.S 668, 684, 104 S.Ct. 2052, 2062-63, 80 L.Ed.2d 674 (1984), citing Powell V. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Johnson V. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); and Gideon V. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). That right exists to protect a defendant's right to a fair proceeding. A fair plea proceeding, like a trial, is guaranteed by the Constitution through the Due Process clauses and defined largely through the Sixth Amendment's several provisions, including the Counsel Clause.  Id. 466 U.S. at 685, 104 S.Ct. at 2063, quoting Adams V. United States ex rel. McCann, 317 U.S. 269, 275-76, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942).  That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command." Id.  Counsel can deprive a defendant of his right to counsel by failing to render "adequate legal assistance." Id. 466 U.S. at 686, 104 S.Ct. at 2064.

At the time of plea offer and indictment proceedings, petitioner was suffering from state of depression, do to family medical history, economy problems and business social of resources establishment.  Petitioner's constitutional right to effective assistance of counsel does extend to cases where

-11-

an appointed attorney by the court:

(1) gives his client legal advice even though counsel
was not originally retained by the client to prepare and
conduct plea negotiation, (2) to provide the necessary skills
and knowledge needed to perfect disputed facts, if the needs
arise, and (3) to allow client to participate in such plea
discussion and decision-making process, if dissatisfy, be able
to replead anew plea agreement.

Counsel Mr. Chiphe did not show any interest toward his
client's ability to make decisions which an attorney may not
encroach upon one's rights.  The information regarding
petitioner's state of mind under depression was available to
counsel at the time of sentencing.  Counsel never took time
to discuss with petitioner information setting forth facts
upon which the information and belief are founded, as such
may have furnish support essential to any meaningful decision
on the merits.  See Exhibit C. The "Presentence Investigation
Report" and this letter was never investigated by counsel,
when such ex parte information both were available.  Counsel
could have contact Mr. Marian Sassetti, M.D., FAAFP mrs/thp,
the primary care physician for petitioner Mr. Moorehead.  As
stated within the letter,

> "During the years of 2005 and 2006, Mr. Moorehead was
> diagnosed with depression.  This caused server mental
> strain and impaired judgment.  Please contact my
> office if you have further questions.  Exhibit C.

A hearing could have been held on the basis of ex parte
information, if investigated, in which petitioner would have

-12-

had the opportunity to (1) addressed so that he be examined on the facts of the information credibility for the truth of the matter, (2) call witnesses, like Mr. Sassetti who had the chance to examined petitioner first hand, and (3) to explore any information that may justisfy further investigation, before proceeding with the sentencing hearing.  See Gardner, 430 U.S. 349, 362, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977) (denial of due process to impose death penalty on basis of information defendant had no opportunity to deny or explain).

There is noway of knowing petitioner's state of mind under depression.  Johnson, 793 F.2d 898 (7th Cir. 1986), the Seventh Circuit held that "Defendant has constitutional right to participate in decisions which are fundamental to his defense, including decisions to forgo assistance of counsel and to waive trial by jury.  Id. at 900-902 [1, 2].  Williams V. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

In Williams, the Court held that the principles and rules announced in Strickland apply to those cases in which "the ineffectiveness of counsel does deprive the defendant of a substantive or procedural right to which the law entitles him."  Id. 529 U.S. at 393, 120 S.Ct. 1495.  Counsel can deprive petitioner of his right to counsel by failing to render adequate legal assistance.  Jones, 167 F.3d at 1145 [5] (7th Cir. 1999). Thus, petitioner's decision to accept plea agreement as written and sentence that followed, along with such waiver terms, was not knowing and intelligently made, as

such was tainted by ineffective assistance of counsel. Mason, 211 F.3d 1065 at 1068-1069 [2-3] (7th Cir. 2000); and DeRoo, 223 F.3d 919 at 923-924 [9, 10] (8th Cir. 2000).

Nowhere in the record of the court files is there any indication a "psychiatric evaluation hearing was had before this court setting forth expert medical opinion and evidence in controversy settlement against petitioner. McNeil, 407 US 245, 32 L.Ed.2d 719, 92 S.Ct. 2083 (1972). Hence, an evidentiary hearing has become necessary to permit petitioner an opportunity to present credible evidence that he lacked the ability to make competent decision, so this court can evaluate the issue regarding the petitioner's state of mind, depression and to develop a record on the issue. Johnson, 793 F.2d 898 at 900-902 [1, 2-3] (7th Cir. 1986).

C. Ground Three: It is Counsel of Record duty and loyalty to provide the Petitioner with a clear "understanding of the law in relation to the Sentencing Guidelines Entitlement based on factors disproportionate to the severity of his crimes as is charged in the indictment, considering the fact that Petitioner was subject to a possible Six month sentence or Probation, Petitioner's Plea offer and negotiation of sentencing package was not knowing and voluntary because it was the subject of ineffective assistance of counsel, not the will of free choice made alone, but given advice of counsel." Sixth Amendment and Due Process Clauses.

-14-

Argument: Under U.S.S.G. § 2F1.1(b), the base offense level for a crime of fraud is calculated based on the dollar amount of the loss caused by the fraud. See U.S.S.G. § 2B1.1(b)(1). See Bonanno, 146 F.3d 502 (7th Cir. 1998). Glover, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001),

> Held, ("Authority does not suggest that a minimal amount of additional time in jail cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.")

(quoting Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Polson, 285 F.3d 563 (7th Cir. 2002) ("A district court cannot rely on inaccurate information in sentencing a defendant; a sentence based on inaccurate information must be set aside"). Id. at 567 [4-8]. The Sixth Amendment right of a criminal defendant to have the assistance of counsel guarantees not just assistance, but also a constitutionally mandated level of adequate legal assistance. Jones, 167 F.3d 1142 (7th Cir. 1999).

With respect to such language as specified in said Plea:

For purposes of calculating the Guidelines promulgated by the United States Code, Section 994, the parties stipulate and agree on the following points:

| | |
|---|---:|
| Base offense: | 6 |
| Loss: $400,000 to 1,000,0000 | 14 |
| Sophisticated means | 2 |
| Leader/Organizer | 2 |
| Abuse of Trust or use of apecial skill | 2 |
| | 26 |
| Acceptance of Responsibility | -3 |
| | 23 |

Based on the facts known to the government, the defendant's criminal history points equal 0 and the defendant's criminal history category is I.

Offense Level = Level 23
Criminal History Category = I

Guideline Range: 46 to 57 Months, Total months to be served in prison, 48 months (4) years.

See Plea Greement at Pages 9-10, Paragraph 6. See also Judgment in a Criminal Case. Exhibit D.

Despite the language in the plea agreement and proffer agreement dated April 13, 2006, it is clear in the present case that petitioner did not possess an understanding of the law in relation to the applicable guidelines provisions, see U.S.S.G. § 5K1.1 and statutory authority, Rule 35 of Title 18 U.S.C., which both provisions provides that such motions would allowed the district court judge to give a sentence lower than that set forth under the guideline range, if the petitioner provided enough useful substantial assistance to the United States Attorney. In Re U.S., 503 F.3d 638 at 640 (7th Cir. 2007);

1) where § 5K1.1 motion for downward departure are designed to consider a defendant's presentenc cooperation and Rule 35(b) motions for downward departure are designed to consider a defendant's post-sentence cooperation,

2) under a Plea Agreement, if negotiated or indicated by promise, would authorize the government to file such motion under § 5K1.1 for downward departure or Rule 35(b) motion to justisfy given the defendant a lower sentence than that set forth in a sentencing package guideline range, on the basis of defendant's substantial assistance to the government.

The constitution mandate level of adequate legal
assistance by counsel (1) to give defendant legal advice even
though he was not originally retained by the defendant to
prepare and conduct his criminal process throughout stages of
the criminal case, (2) in case of a "Plea Agreement Offer",
to limit government ability in the context of using self
incriminating information agaisnt defendant, to determine the
defendant's guideline range, if the prosecutor does not fully
get what he or she bargain for, if such failure was not do to
poor cooperation or substantial assistance to the government,
but to protect the defendant, if such poor process with
respect to criminal activities of others do to prosecutor's
own deficient performance and handling legal related to the
other offense and the offender, and (3) to explain fully to
defendant the legal basis on how the "Guidelines Work" in the
setting of Cooperational agreement based on substantial
assistance by the defendant, thereby authorizing the government
to move the court by its own motion for downward departure
from established sentencing guideline range.

The Sixth Amendment guarantees a criminal defendant the
right to counsel during the critical stage of an adversarial
proceeding.  Here, Plea Process, Kirby, 406 U.S. 682, 690, 92
S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), the right to counsel
also applies at critical stages in the sentencing phase of
such criminal prosecution.  Mempa, 389 U.S. 128, 137, 88 S.Ct
254, 258, 19 L.Ed.2d 336 (1967), "[T]he focus of the
constitutional protection of right to counsel relates to the

adversary character of criminal proceedings and the particular process involed." Gilbert, 87 S.Ct. 1951 (1967), that a person who happens to be a laywer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. Strickland, 466 U.S. at 685, 104 S.Ct. at 2063.

In the present case, counsel Mr. Chiphe did not inform, or discussed, or advise petitioner of the law as it related to "Guidelines Provisions, § 5K1.1, and Rule 35(b) statutory provisions, by failing to ensure that petitioner understood the applicability of factors that requires performance aside from others factors, like U.S.S.G. § 3E1.1 provision. The plea and sentencing package was the result of ineffective assistance of counsel. Jones, 167 F.2d at 1145 [5] (7th Cir. 1999); Mason, 211 F.3d 1065 at 1069 [2] (7th Cir. 2000); and also see DeRoo, 223 F.3d 919 at 923-924 [9, 10] (8th Cir. 2000).

The bad information, without discussing the matter of the plea agreement as proposed, was perceptually misleading and deceitful by both counsels and the prosecutor, as such decision to accept plea and sentencing package was not knoweing and itelligently or voluntary made.

Hence, an evidentiary hearing has become necessary to prevent injustice and prejudice to petitioner, as a developm-ent on the issue is needed, where petitioner had exercised diligence to make a showing that, but for ineffectiveness and errors made by counsels, Mr. Galvan and Mr. Chiphe at Plea and Sentencing satages, the result of both proceedings would

-18-

have brought a different outcome.  Sixth Amendment and Fifth
Amendment of the constitution.

The plea agreement at issue here is onesided, nowhere in
the plea agreement is there (1) a § 1B1.8 protection provided
to limit the prosecutor's exercise of discretion, (2) a plea
bargaining and guidelines agreement which may result in a
departure discretion by the prosecutor regarding motions
being filed under U.S.S.G. § 5K1.1 and Rule 35(b), where a
defendant agrees to cooperate with the government by providing
information concerning unlawful activities of others, and (3)
reserve the right to challenge at sentencing any factors that
may increase the applicable guideline range based on clearly
inaccurate information, 14 points should not have been given,
leadership role should not have been allowed, as such factors
and plea agreement in connection with waiver terms was, as
set forth in this § 2255 motion, knowingly and intelligently
or voluntary made.  Jones, 167 F.3d 1142 (7th Cir. 1999), as
such was tainted by ineffective assistance of counsel.

D. Ground Four: Because of Ineffective Assistance of Counsel,
Sixth Amendment, and Due Process Fifth Amendment, Petitioner
never had an unobstructive choice of free will and decisions
on whether or not to reject Plea Agreement that waives the
rights to a direct appeal or to file a petition under § 2255,
Because counsels of record never discussed nor explained the
effect of such known rights to pursue meritorious arguable
issues in disagreement on a point of law, including Guideline

Entitlement and Application.  As such waiver, like Plea
Agreement was not knowingly and intelligently or voluntary
made.

Argument: Again, The Sixth Amendment guarantees a criminal
defendant the right to counsel during the critical stage of
an adversarial proceeding. Kirby, 406 U.S. 682, 690, 92 S.Ct.
1877, 1882, 32 L.Ed.2d 411 (1972), the right to counsel also
applies at critical stages in the sentencing phase of such
criminal prosecution. Mempa, 389 U.S. 128, 137, 88 S.Ct. 254,
258, 19 L.Ed.2d 336 (1967), "[T]he focus of the constitutional
protection of right to counsel relates to the adversary
character of criminal proceedings and the particular process
involved." Gilbert, 87 S.Ct. 1951 (1967), that a person who
happens to be a lawyer is present at trial alongside the
accused, however, is not enough to satisfy the constitutional
command. Strickland, 466 U.S. at 685, 104 S.Ct. at 2063, see
Williams, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389
(2000).

It was the reading of the plea agreement when petitioner
first heard of the words appeal, neither counsels took the
necessary steps to explain what was a § 2255 petition, at the
time of plea, counsel Mr. Galvan never discussed anything
about a waiver in connection with appeal, nor did he discuss
the purpose of a § 2255.  The judgment on Plea Agreement was
appealable, and if an illegal sentence violates the law, it
to was appealable.  See Exhibit A., and Fed.R. App.P. 4(b)(1)
(A).  The due process clause of the Fifth Amendment is a clear

shield against unfair or deceptive practic and treatment of an accused by the Government and defense attorney.  Counsels of record misleading concerns encouraged petitioner to accept the prosecutor's proposed offer to plead guilty, because they was not realy interested in the outcome of petitioner's criminal case.  This is precisely the type of evidence that do not appear on the record file of the court.  Jones, 167 F.3d 1142 at 1144-1145 [1-5] (7th Cir. 1999); DeRoo, 223 F.3d 919 at 923-924 [9, 10] (8th Cir. 2000); and Mason, 211 F.3d 1065 at 1067-1068 (7th Cir. 2000). The Plea and Waiver terms was not knowing and intelligently or voluntary made, as such was the result of ineffective assistance of counsel. Id. Replead anew is necessary to cure a manifest injustice.

**WHEREFORE,** Petitioner Mr. Mooreahead prays that this Honorable Court will grant him all the relief that he is entitled.  The Sixth Amendment right of a criminal defendant to have the assistance of counsel guarantees not just assistance, but also a constitutionally mandatory level of adequate legal assistance.  This plea and Sentence should be withdrawn because it was the result of ineffective assistance of counsel.

Respectfully Submitted

William  Moorehead
Reg. No. #17999-424
FPC Marion Satellite Camp
P.O. Box 1000
Marion, IL 62959

-21-

## CERTIFICATE OF SERVICE

This certifies under the penalty of perjury pursuant to 28 U.S.C. § 1746; and Title 18 U.S.C. § 1621 that, I _William MooREHEAD_ have on this _13th_ day of _MARch_, 2008, placed a true and exact copy of said:

**MEMORANDUM IN SUPPORT THEREOF**
**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

in the FPC Marion Satellite Camp Legal Mailbox through authorized mail service, at Marion, IL, first class postage prepaid, addressed to the following parties:

United States District Court for the Northern District of Illinois, Eastern Division, Honorable James B. Zagel, in the Everett McKinley Dirksen Building, 219 S. Dearborn Street, Chicago, Illinois 60604.

Jacqueline Stern, Assistant United States Attorney, and Patrick J. Fitzgerald, United States Attorney, 219 S. Dearborn Street., 5th Floor, Chicago, Illinois 60604.

**LOCATION OF CONFINEMENT**

_William Moorehead_
William Moorehead
Reg. No. #17999-424
FPC Marion Satellite Camp
P.O. Box 1000
Marion, IL 62959

**E X H I B I T   A.**

June 4, 2007

Imani Chiphe
Staff Attorney
Federal Defender Program
United States District Court
55 E. Monroe
Suite 2800
Chicago, Il 60603

Dear Mr. Chiphe:

This letter is to serve as two requests. The first request is I would like for you to review my case and see if there is anyway we could ask the judge to reconsider my sentence. I am not sure that I was given a fair hearing. There were never any plea negotiation, charge bargaining or sentencing bargaining. I had already stated to Mr. Galvan that I disagree with the charge that I lead the other two people into this crime and that was not true. All of my employees had free will to do what they felt was the right thing to do. I would like to review the Marion Stamps Youth fund charge which was not fairly presented. There was never anything presented in writing from the prosecutor that I would be given credit for my cooperation in another case. Mr. Galvan assured me that all of these things would be addressed in the sentencing bargaining but he was not available to do so.

If you can't do this I would like to know if it is appropriate for me to send a letter directly to the judge.

The second request is to ask for an extension of time before reporting to serve my sentence. I need the extension threw the end of August.

1.  I need more time to find housing for Maurice. I have applied with Chicago Association of Retarted Citizens but they have to get approval from the state Department of Human Services and they stated that could take up to 90 days. During this time I must take him to see a psychiatrist and a neurologist. Maurice currently attends school at CARC. Please keep in mind he lives with me 3 days a week.

2.  I. Have blood test scheduled for August 17th for a cardiologist follow up at Rush Hospital.

3.  My son is getting married on August 18th.

4. I am working with the Illinois manufacturing foundation , a not-for-profit, to set up this training program for ex-offenders in building maintenance that we hope will get started in August .

Ms. Kathy Kiriklakis, the probation officer suggested we submit this request as soon as possible.

If you have any questions or need additional information.  Please contact me at 708-763-9497 or 312-318-9759.

Sincerely,

William Moorehead

William Moorehead

Case# 05-CR-546-1

cc: Ki Kiriklakis

July 5, 2007

The Honorable Judge James Zagel
Everett Mckinley Dirksen Building
219 South Dearborn Street, Rm 2503
Chicago, Il 60604

Subject: William Moorehead case # 05cr546

Dear Judge Zagel,

I am writing this letter to you because I haven't been able to get my attorney to respond. I am being represented by Mr. Imani Chiphe form the Federal Defender program, who took over from Mr. Luis Galvan who went on sick leave in February 2007. During the time he took over my case in March until my sentencing In April, we only met for 30 minutes to discuss the case. At that time I told him that there were items in the plea agreement that were not true and I did not agree to but Mr. Galvan promised me that they would be negotiated before my sentencing. To my knowledge there was no negotiating or discussion about those charges that I disagreed with, in fact I don't feel that I was given a fair defense. Therefore at this time I need to come to my own defense.

Your honor, I am asking that you please re-review my case and reconsider my 48 months sentence. I never led or forced anyone to do anything wrong. All of my employees had free will and they were the experts in their field. I am a hard working man who has always given back to my community. Please take this in consideration and show mercy. I can better serve and make a contribution outside.

In my sentencing hearing you recommended that I be sent to Oxford but that didn't happen, I am being sent to USP Marion. Marion is much further than oxford and will cause a serious hardship on my family. Can you please see if this can be changed?

Your honor can I please meet with you and discuss these issues because I can't afford to pay an attorney and I can't get the Federal Defender to do anything.

Thanking you in advance.
I can be reached at 312-318-9759 or 708-763-9497, I await your response.

Sincerely,
William Moorehead
William Moorehead

1030 N. ELMWOO
OAK PARK, Il. 60302

UNITED STATES DISTRICT COURT
Office of the Chief Probation Officer
Northern District of Illinois
55 East Monroe Street - Suite 1500
Chicago, Illinois 60603-5702

Honorable James B. Zagel

July 13, 2006

## SUPPLEMENTAL REPORT

RE:    MOOREHEAD, William
Docket No.: 05 CR 546-1
Disposition Date: Pending

The presentence investigation (PSI) report and a supplemental report were sent on June 6, 2006, and June 13, 2006. Since the submission of these reports, the undersigned has received additional information regarding the defendant's physical condition and mental and emotional health.

## PART C. OFFENDER CHARACTERISTICS

Physical Condition

The records department at Northwestern Memorial Hospital was unable to locate the defendant's medical records.

Medical records obtained from Rush University Medical Center reflect that the defendant underwent surgery to repair a hernia in June 1997. While records reflect that he had undergone previous surgery to correct the condition, the repair had broken down. In November 1997, the defendant underwent a polypectomy. In September 1998, the defendant underwent another surgery to repair his recurrent hernia. In October 1998, the defendant underwent surgery to treat an infection (related to his last hernia repair surgery). In January 2004, the defendant underwent a cardiac catheterization (which revealed coronary artery disease). In December 2005, the defendant underwent a pharmacologic stress test with SPECT Myocardial Perfusion to detect coronary artery disease (with evidence of ischemia). Records also reflect that the defendant has a history of dyslipidemia, hypertension and diabetes mellitus and coronary artery disease.

Medical records obtained from Doctor Marian Sassetti reflect that the defendant has been a patient on numerous occasions since 2001 and the he has a history of hypertension (and chest pain), diabetes mellitus, high cholesterol, a recurring hernia and erectile dysfnction. Records also reflect that the defendant reported no known allergies.

**SUPPLEMENTAL REPORT – Page 2**
**RE:     MOOREHEAD, William**
**            Docket No. 05 CR 546-1**


Mental and Emotional Health

It is noted that in October 2005, Doctor Sassetti recommended that the defendant participate in counseling (due to stress relating to his pending divorce and the instant offense).

                                    Respectfully submitted,

                                    Kathy G. Kiriklakis
                                    U. S. Probation Officer
                                    Telephone:  (312) 435-7628

                                    Reviewed by:

                                    Susan Rozanski
                                    Supervising U. S. Probation Officer


KGK:kgk

**E X H I B I T  B.**

# FEDERAL DEFENDER PROGRAM



*UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF ILLINOIS*

55 E. MONROE STREET - SUITE 2800
CHICAGO, ILLINOIS 60603

PHONE 312.621.8300
FAX 312.621.8399

**TERENCE F. MAC CARTHY**
*EXECUTIVE DIRECTOR*

**CAROL A. BROOK**
*DEPUTY DIRECTOR*

**LOIS K. WAGNER**
*ADMINISTRATIVE OFFICER*

PIYUSH CHANDRA
IMANI CHIPHE
CHRISTINA L. FARLEY
LUIS M. GALVAN
DANIEL J. HESLER
MARY H. JUDGE
HELEN J. KIM
ROSE J. LINDSAY
MATTHEW J. MADDEN
DANIEL G. MARTIN
JOHN F. MURPHY
GABRIEL B. PLOTKIN
SERGIO F. RODRIGUEZ
ROBERT D. SEEDER
ALISON M. SIEGLER
WILLIAM H. THEIS
HEATHER L. WINSLOW

February 21, 2007

William Moorehead
1030 N. Elmwood
Oak Park, IL 60302

Dear Mr. Moorehead:

We are writing to let you know that Luis M. Galvan, the Federal Defender Program Staff Attorney appointed to represent you, has unexpectedly had to take a medical leave from the Federal Defender Program. Therefore, Mr. Galvan will not be able to continue to represent you in your federal case number 05 CR 546. To make sure that you continue to receive the best possible representation, your case has been reassigned to **Imani Chiphe**, who is also a Staff Attorney at the Federal Defender Program, telephone 312/621-8349.

We regret any difficulties or inconveniences this necessary change in lawyers may cause you. If you have any questions, please feel free to call me at 312/621-8339.

Very truly yours,

Carol A. Brook

BEFORE THE HEARING BOARD OF THE

http://www.iardc.org/07CH0133CM.html

1/8/2008 5:01 PM

BEFORE THE HEARING BOARD
OF THE
ILLINOIS ATTORNEY REGISTRATION
AND
DISCIPLINARY COMMISSION

In the Matter of:

LUIS MARTIN GALVAN,                    Commission No. 07 CH 133

Attorney-Respondent,

FILED - December 31, 2007

No. 3124344.

COMPLAINT

Jerome Larkin, Administrator of the Attorney Registration and Disciplinary Commission, by his attorney, Maria C. Sullivan, pursuant Supreme Court Rule 753(b), complains of Respondent, Luis Martin Galvan, who was licensed to practice law in the State of Illinois November 5, 1979, and alleges that Respondent has engaged in the following conduct which tends to defeat the administration of justice o bring the courts or the legal profession into disrepute:

COUNT I
*(Violation of Respondent's terms of employment with the Federal Defender Program)*

1. Between October 1, 1979, and July 31, 2007, Respondent was employed as an attorney with the Federal Defender Program for the Uni States District Court for the Northern District of Illinois.

2. At all times alleged in this complaint, the personnel rules of the Federal Defender Program provided, in part, as follows:

OUTSIDE EMPLOYMENT: Employees are expected to devote their full working time to Federal Defender Program business and no other employment should be accepted without the specific prior approval of the Executive Director. Employees are prohibited from the outside practice of law, even on non-working hours, unless specifically authorized by the Executive Director.

3. In or about January 2002, Leonardo Batalla and Alfonso Batalla, both of whom had been convicted of aggravated criminal sexual assault

and aggravated kidnapping and were incarcerated at Stateville Correctional Facility in Joliet, Illinois, contacted Respondent. The Batalla brothers requested that Respondent represent them in an investigation of their case and related legal proceedings in connection with convictions.

4. Between January 2002 and June 2005, Reyna Garcia, the mother of the Batalla brothers, and Elena Munoz, the wife of Alfonso Batalla, paid Respondent $3,000 in cash in connection with the Batallas' matter.

5. At no time did Respondent deposit the $3,000 in cash he received in connection with the Batallas' case into a separate and identifiable client trust account.

6. At no time did Respondent obtain the authority of the Executive Director of the Federal Defender Program to engage in outside employment, or otherwise advise his supervisors at the Federal Defender Program, that he had accepted $3,000 in cash in connection with Batallas' matter.

7. Between September 2002 and December 2006, Respondent requested the assistance of several lawyers and interns of the Federal Defender Program in connection with the Batallas' matter. Some of the lawyers and interns accompanied Respondent on trips to Stateville Correctional Center in Joliet, Illinois, to meet with the Batallas, and some attorneys reviewed the Batallas' files and performed research on issues related to the Batallas' case. Besides personnel, Respondent used certain other resources of the Federal Defender Program, such as copy services and office automobile, in connection with the Batallas' case. At no time did Respondent seek the permission of his supervisors to involve other staff or to use resources of the Federal Defender Program to work on the Batallas' legal matters.

8. By reason of the conduct outlined above, Respondent has engaged in the following misconduct:

   a. breach of fiduciary duties to the Federal Defender Program;

   b. failure to keep funds of a client or third person in a lawyer's possession in connection with a representation in a separate and identifiable client trust account in violation of Rule 1.15 of the Illinois Rules of Professional Conduct;

   c. conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(a)(4) of the Illinois Rules of Professional Conduct; and

   d. conduct which tends to defeat the administration of justice or bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 770.

## COUNT II
### (Neglect and Failure to Promptly Refund Unearned Fees in the Batalla matter)

9. The Administrator realleges the facts set forth in Count I above.

BEFORE THE HEARING BOARD OF THE

10. On November 16, 2006, the Administrator received a request from Alfonso Batalla to investigate Respondent's handling of his legal matter. After reviewing the materials submitted by Batalla, the Administrator initiated investigation number 06-CI-5035 into Respondent's conduct.

11. On February 23, 2007 and May 8, 2007, Counsel for the Administrator sent communications to Respondent requesting a full, wr accounting of the funds tendered to him by the Batalla family. Respondent received the communications shortly after they were m: Administrator.

12. Respondent did not provide an accounting of the funds tendered to him by the Batalla family as requested in the Administra communications referred to in Paragraph 11 above.

13. On May 24, 2007, a subpoena *duces tecum* was sent by regular and certified mail to Respondent at his registered home and business addresses. The subpoena *duces tecum* commanded Respondent's appearance on June 15, 2007, at the Chicago offices of the Attorney Registration and Disciplinary Commission and the production of certain documents at that time. Respondent received the subpoena *duces tecum* shortly after it was mailed by the Administrator.

14. Respondent appeared at the Commission's Chicago office on June 15, 2007, for a sworn statement in connection with investigation number 06-CI-5035. During his sworn statement testimony, Respondent advised Counsel for the Administrator under oath that he had initially kept the $3,000 cash in an envelope in his desk, and that $500 remained "unused" in the envelope.

15. At no time did Respondent, or any of the attorneys he requested to assist him in the Batalla matter, file any pleading on behalf of th Batallas.

16. Neither Respondent, nor any lawyer or intern from whom Respondent requested assistance, provided sufficient legal services to account for $2,500 in fees.

17. At no time did Respondent provide any receipt to establish that any of the Batallas' money was used to pay his or other lawyers' costs i their matter.

18. At no time did Respondent provide any accounting of the funds tendered to him by the Batalla family.

19. In or about October 2007, Respondent refunded $3,000 to Reyna Garcia, the mother of the Batalla brothers.

20. As a result of the foregoing, Respondent has engaged in the following misconduct:

    a.  failure to act with reasonable diligence and promptness in representing a client in violation of Rule 1.3 of the Illinois Rules of Professional Conduct;

b.  failure to promptly refund upon withdrawal from employment that part of a fee paid in advance that has not been earned in violation of Rule 1.16(e) of the Illinois Rules of Professional Conduct;

c.  conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(a)(5) of the Illinois Rules of Professional Conduct; and

d.  conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 770.

## COUNT III
### (*Misrepresentations to the ARDC*)

21.  The Administrator realleges the facts set forth in Counts I and II above.

22.  On November 27, 2006, December 19, 2006, and January 10, 2007, Counsel for the Administrator sent communications to Respo requesting that Respondent provide the Administrator with information and documents relating to his handling of the matter as desi investigation number 06-CI-5035. Respondent received the communications shortly after they were mailed by the Administrator.

23.  On January 22, 2007, the Administrator received a response from Respondent. In his response letter to the Commission, Respondent stated as follows:

> At the time [the Batallas] contacted me, they were on appeal and represented by the State Appellate Defender. They asked me to represent them in a federal Habeas Corpus proceeding and some investigation of their case. I told them they could not hire me since I was an employee of the Federal Defender. I did tell them that I could hire, on their behalf, some young lawyers and interns to look into their case and that I would supervise them on a pro bono basis.

> Over the years many first year lawyers and others did work on their file as needed. Any funds tendered by the family went to them.

24.  Respondent appeared at the Commission's Chicago office on June 15, 2007, for a sworn statement in connection with investigation number 06-CI-5035. During his sworn statement testimony, Respondent testified under oath and made the following statements:

> I make it clear to [the Batallas] that the money that they're going to give me is not for me. I'm not going to be hired by them. It's for the people that are doing, you know, research and ultimately are going to file this thing. I'm going to supervise them, but I'm not taking any money.

> We use a good portion of [the $3,000 fee] for Xeroxing. We use a good portion of it for expenses of the

people that are going to Stateville, such as meals and gas, that kind of stuff.

25. Respondent's statements to the Administrator in his January 19, 2007 letter, as set forth in paragraph 23 above, and in his June 15, 20 sworn statement, set forth in paragraph 24 above, were false and intended to mislead the Administrator. Although the Respondent did re certain services by several attorneys, then employed at the Federal Defender Program, Respondent did not explain to the attorneys that th matter was not a Federal Defender matter, nor did Respondent pay any portion of the Batallas' $3,000 fee to them or reimburse them for meals, gas or other costs.

26. As a result of the foregoing, Respondent has engaged in the following misconduct:

   a. knowingly making a false statement of material fact in connection with a disciplinary matter in violation of Rule 8.1(a)(1) of the Illinois Rules of Professional Conduct;

   b. engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(a)(4) of the Illinois Rules of Professional Conduct, and

   c. conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 770.

**WHEREFORE**, the Administrator requests that this matter be assigned to a panel of the Hearing Board, that a hearing be held, and that th panel make findings of fact, conclusions of fact and law, and a recommendation for such discipline as is warranted.

Respectfully submitted,

Jerome Larkin, Administrator
Attorney Registration and
Disciplinary Commission

By:  Marita C. Sullivan

Marita C. Sullivan
Counsel for the Administrator
One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, IL 60601
Telephone: (312) 565-2600

**E X H I B I T   C.**

# LAKE STREET FAMILY PHYSICIANS

*Paul Kungl, MD*      *Deborah Manus, MD*      *Marian Sassetti, MD*

July 10, 2007

To Whom It May Concern:

I am the primary care physician for William Moorehead (DOB 12/13/42). During the years of 2005 and 2006, Mr. Moorehead was diagnosed with depression. This caused severe mental strain and impaired judgement. Please contact my office if you have further questions.

Sincerely,

Marian Sassetti, M.D, FAAFP
mrs/thp

1010 W. LAKE STREET    SUITE 500    OAK PARK, IL 60301
PHONE: 708-524-8600    FAX: 708-524-8147

**E X H I B I T   D.**

FILED

APR 1 3 2006

JUDGE JAMES B. ZAGEL
UNITED STATES DISTRICT COURT

FILED

APR 1 3 2006

JUDGE JAMES B. ZAGEL
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA          )
                                  )
          v.                      )    No. 05 CR 546
                                  )    Judge James B. Zagel
WILLIAM MOOREHEAD                 )

### PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, WILLIAM MOOREHEAD, and his attorney, LUIS GALVAN is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in the above captioned case.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities or agencies except as expressly set forth in this Agreement.

6.    For purposes of calculating the Guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties stipulate and agree on the following points:

a.    The applicable Guidelines version is the 2001 Guidelines Manual.

b.    The applicable Guidelines Section is § 2B1.1, and the base offense level is 6.

c.    The parties agree that pursuant to Guideline § 2B1.1(b)(1)(H), the base offense level should be increased by 14 levels because the loss that defendant Moorehead knew about or could reasonably foresee was between $400,000 and $1,000,000. The parties agree that the loss does not overstate the seriousness of the offense, and the defendant agrees and stipulates that he will not seek a downward departure based on the loss calculation.

d.    The parties agree that pursuant to Guideline § 2B1.1(b)(8)(C), the base offense level should be increased by 2 levels, because the offense involved sophisticated means.

e.    The parties agree that the base offense level should be increased by 2 levels, pursuant to Guideline § 3B1.1(c), based on the defendant's role in the offense because the defendant was an organizer/leader of a criminal activity.

f.    The parties agree that the base offense level should be increased by 2 levels, pursuant to Guideline § 3B1.3 because the

9

defendant abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense.

g.    The parties agree that the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct.    If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for her actions, within the meaning of Guideline § 3E1.1, a 2 level reduction in the offense level is appropriate.

h.    The parties agree that the defendant has provided timely notice of her intention to enter a plea of guilty, within the meaning of Guideline § 3E1.1(b), so that an additional 1 point reduction in the offense level is appropriate, if the offense level is 16 or greater, and the Court finds that a reduction under Guideline § 3E1.1(a) is appropriate.

i.    Based on the facts known to the government, the defendant's criminal history points equal 0 and the defendant's criminal history category is I.

j.    Based on the above calculations, which are preliminary in nature, and assuming that the defendant's criminal history category is I, the preliminary projected applicable offense level is a level 23, so that the preliminary projected applicable sentencing range is 46 to 57 months.

10

matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

17. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. Both parties are free to recommend whatever sentence they deem appropriate within the applicable guidelines, except that the defendant reserves the right to seek a downward departure based on extraordinary family circumstances; the government is free to oppose that motion, and is free to take any position on the propriety or extent of the proposed departure.

18. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose the maximum penalties as set forth in paragraph 9 above. However, the sentencing court is obligated to consult and take into account the Sentencing Guidelines in imposing a reasonable sentence. The defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

19. Regarding restitution, the parties agree as follows:

a. The defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A the Court must order defendant to make restitution in the full amount due and owing as it relates to the Marion Stamps Memorial Charity Fund. The defendant acknowledges

16

(Rev. 03/05)

## United States District Court
## Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case Number:  05-CR-546-1 |
| | ) | Judge:  James B. Zagel |
| WILLIAM MOOREHEAD | ) | |

Imani Chiphe, Defendant's Attorney
Jacqueline O. Stern, AUSA

### JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

**THE DEFENDANT ENTERED A PLEA OF:**

guilty to Counts 1 and 2 of the indictment, which was accepted by the court.

**THE DEFENDANT IS CONVICTED OF THE OFFENSES(S) OF:**

| Title & Section | Description of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18:1343 and 2 | Wire fraud | 8/2002 | 1 and 2 |

The defendant is sentenced as provided in the following pages of this judgment.

## IMPRISONMENT

**IT IS THE JUDGMENT OF THIS COURT THAT:**

the defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total uninterrupted term of **forty-eight (48) months** on each of counts 1 and 2.  Said periods to be served concurrently.

The Court recommends to the Bureau of Prisons:

Incarceration at an institution in the Chicagoland area.

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for the periods specified for each count of conviction.

The defendant is sentenced on all count(s) of conviction, namely, Counts 1 and 2 to a period of **thirty-six (36) months** of Supervised Release, said periods to run concurrent.

The defendant shall report immediately to the probation office in the district in which the defendant is to be supervised, but no later than seventy-two hours after sentencing.  In addition, see the attached page(s) defining the mandatory, standard and discretionary conditions of probation that apply in this case.

MOOREHEAD, William
05 CR 546 - 1

## MANDATORY CONDITIONS OF SUPERVISED RELEASE
### (As set forth in 18 U.S.C. § 3583 and U.S.S.G. § 5D1.3)

1)  For any offense, the defendant shall not commit another federal, state or local crime;

2)  for any offense, the defendant shall not unlawfully possess a controlled substance;

3)  for offenses committed on or after September 13, 1994, the defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within fifteen days of release from imprisonment and at least two periodic drug tests thereafter for use of a controlled substance as determined by the court:

    The above drug testing condition is suspended based on the determination that the defendant poses a low risk of future substance abuse.

4)  for a domestic violence crime committed on or after September 13, 1994, as defined in 18 U.S.C. § 3561(b) by a defendant convicted of such an offense for the first time, the defendant shall attend a rehabilitation program in accordance with 18 U.S.C. § 3583(d);

5)  for a defendant classified as a sex offender pursuant to 18 U.S.C. § 4042(c)(4), the defendant shall comply with the reporting and registration requirements set forth in 18 U.S.C. § 3583(d);

6)  the defendant shall cooperate in the collection of a DNA sample from the defendant if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 and the Justice for All Act of 2004; and

7)  The defendant shall pay any balance on the special assessment, restitution and/or fine imposed against the defendant.

## STANDARD CONDITIONS OF SUPERVISED RELEASE

1)  For any felony or other offense, the defendant shall not possess a firearm, ammunition, or destructive device as defined in 18 U.S.C. § 921;

2)  the defendant shall not leave the judicial district without the permission of the court or probation officer (travel outside the continental United States requires court authorization);

3)  the defendant shall report to the probation officer as directed by the court or the probation officer and shall submit a truthful and complete written report within the first five days of each month;

4)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

5)  the defendant shall provide to the probation officer access to any requested financial information including, but not limited to, tax returns, bank statements, credit card statements, credit applications, etc.;

6)  the defendant shall support his or her dependents and meet other family responsibilities;

7)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

8)  the defendant shall notify the probation officer ten (10) days prior to any change in residence or employment;

9)  the defendant shall refrain from excessive use of alcohol;

10) the defendant shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician, and shall submit to periodic urinalysis tests as requested by the probation officer to determine the use of any controlled substance;

MOOREHEAD, William
05 CR 546 - 1

11)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

12)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

13)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

14)    the defendant shall notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law enforcement officer;

15)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

16)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement; and

17)    if this judgment imposes a special assessment, restitution or a fine, it shall be a condition of probation or supervised release that the defendant pay any such special assessment, restitution or fine in accordance with the court's order set forth in the Criminal Monetary Penalties sheet of this judgment.


The defendant shall not incur any new credit charges, or open additional lines of credit without approval of the probation officer.

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the "Schedule of Payments." Unless waived, the defendant shall pay interest on any restitution and/or fine of more than $2,500, unless the restitution and/or fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). The payment options may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

| Total Assessment(s) | Total Fine | Restitution | Mandatory Costs of Prosecution |
|---|---|---|---|
| $200.00 | Fine Waived | $19,991.00 | $ |

The defendant shall notify the United States Attorney's Office having jurisdiction over the defendant within thirty days of any change of name, residence or mailing address until all special assessments, restitution, fines, and costs imposed by this judgment are fully paid.

Restitution is ordered in the amount of $19,991.00

Restitution to be paid as listed below.

| Name of victim entitled to restitution (mailing address noted for public entities only) | Restitution Ordered | Priority |
|---|---|---|
| Marion Stamps Memorial Charity Fund | $19,991.00 | 100 % |

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority payment column above. Pursuant to 18 U.S.C. § 3664(i), all non-federal victims shall be paid in full prior to the United States receiving payment. Pursuant to 18 U.S.C. § 3664(j), if a victim has received compensation from insurance or any other source with respect to a loss, restitution shall be paid to the person who provided or is obligated to provide the compensation. All restitution to victims required by the order shall be paid to the victims before any restitution is paid to such a provider of compensation.

# SCHEDULE OF PAYMENTS

• Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs. If this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.

• All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program, are to be by money order or certified check payable to the Clerk of the Court, U.S. District Court, unless otherwise directed by the Court.

• Unless waived, the defendant shall pay interest on any fine and/or restitution of more than $2,500, unless the same is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). Payment options included herein may be subject to penalties of default and delinquency pursuant to 18 U.S.C. § 3612(g).

• Pursuant to 18 U.S.C. §§ 3613(b) and ©) and 3664(m), restitution and/or fine obligations extend for twenty years after release from imprisonment, or from the date of entry of judgment if not sentenced to a period of imprisonment.

**MOOREHEAD, William**
95 CR 546 - 1

Payment of the total criminal monetary penalties shall be due as follows:

        In full:

        Due immediately.


Pursuant to 18 U.S.C. § 3664(k) the defendant must notify the court of any material changes in the defendant's economic circumstances. Upon such notice, the court may adjust the installment payment schedule.

Pursuant to 18 U.S.C. § 3664(n), if a person is obligated to provide restitution, or pay a fine, received substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

MOOREHEAD, William
05 CR 546 - 1

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:  **before 2:00 P.M. on July 12, 2007.**

Date of Imposition of Judgment/Sentencing: April 26, 2007

JAMES B. ZAGEL
UNITED STATES DISTRICT JUDGE

Dated at Chicago, Illinois this 26th day of April, 2007